Mr. Breuder, thank you for appearing and nice to see you again. You may proceed. Thank you, Your Honor. It's always good to be here. May it please the Court, I have the honor to represent John Messenger, an exemplary employee since about 1985 of the United States Department of Labor where he worked as a labor economist. He did such a good job that in about 2000, he was recruited to work with the International Labor Organization in scenic Geneva and took a detail there pursuant to federal statute which lasted quite a while, kind of the prelude to this litigation. Is he still working there? Yes, ma'am, he is and still having a good career at ILO. During the course of his international transfer, the government was responsible for collecting from him, if he chose to participate, in the FERS basic annuity and also in group health insurance, had he chosen that, in group life insurance, all these programs administered by the Office of Personnel Management. This is set by statute, it's very clearly laid out in OPM regulation, it was documented in an agreement between Labor and Mr. Messenger in 2000 when he took on the transfer to Geneva. Away he went, did a good job, two things happened at Labor that brought us to this court. First, they lost track of him. He was out in Geneva and they just weren't thinking about where John Messenger was, not just him but there were other employees involved in this and they eventually located him. Second thing that occurred is that their accounting systems apparently changed and Mr. Messenger had been paying into DOL checks for the group life insurance and the FERS basic annuity on the theory and, in fact, in the practice, for a while at least, that Labor would deposit the checks, take the proceeds of those checks along with its own contributions and send them over to the Office of Personnel Management, the custodian of these various benefit accounts for life insurance and for the FERS basic annuity. Mr. Breuer, we're familiar with the facts. You're arguing that the Department of Labor acted in bad faith. Yes. And that's a basis for the attorney fee. It is one basis for the attorney's fees, yes. Why are you concluding that they acted in bad faith? On what basis do you reach that conclusion? I don't think they were evil or malicious people. All that we did to come to that conclusion was take a look at what we were requesting from the MSPB, what Mr. Messenger had been requesting prior to the onset of litigation in 2005 and 2006 up through 2007 or so, which was an accounting for these benefits. The Labor Department simply would not provide it. I'm not saying they didn't do it. I'm not saying they did it maliciously or with an attempt to harm Mr. Messenger. Certainly, that was not the case. They were just trying to sort this through. It may have taken them a while to do it. But they never did. I mean, this went on from 2005 or 2006, when Messenger started requesting an accounting, to the date we settled this case, which was June of 2010. But as of the time he requests the accounting, he's already passed the regulatory five-year period that he's even allowed to be in it. He didn't know that because it wasn't until 2008. Remember, he started making these requests in 2005 and 2006 when some of his checks were not being cashed. He communicated by email, by telephone, even made a personal appearance in Washington to meet with Labor Department officials to sort this stuff out. Well, the fact that he didn't know that there might be a regulatory basis upon which the Department of Labor could question his ability to continue to participate in all of these employee benefits doesn't change whether or not they acted in bad faith. Oh, they never questioned his ability to continue these payments, not in 2005, 2006, 2007, and 2008. Their problem was they couldn't figure out when the payments had been received, what had been received, what had been paid by DOL to the Office of Personnel Management, and when it had been paid. There was supposed to have been an audit, and this is shown in the materials in the brief appendix, that this had nothing to do with whether or not the Labor Department was supposed to continue the benefit contributions. That arose during the course of the MSPB litigation, Your Honor. And during the course of the MSPB litigation, first, what occurred here was that the Labor Department retroactively terminated Messenger's re-employment, as they did this in 2008, retroactively terminating them in 2005. Again, they'd lost track of this employee. They didn't know what was going on until they figured it out in 2008. Neither did Messenger, as far as what the Labor Department's intent was, until he learned from them in 2008 what they intended to do. There was nothing that precluded, as a matter of law, this particular appointment from being extended from 2005 to 2008. There's actually a provision that allows an agency to go to the Department of State to get an extension of one of these international transfers. Now, they didn't do it, but they weren't precluded from doing it. So when the MSPB litigation began, there were two problems. One... Are you saying that his service at ILO was somehow benefiting national security, or necessary to our national security? That would be a determination for the Department of State, not me. I can't... That wasn't the issue in the case. The question was not whether... This was not a case against the State Department. They have a whole separate little tiny division someplace on C Street where they make these determinations, and whatever the criteria they use, they use. But this was not a question in the appeal. They could have done it. They could have been requested to do so by the Department of Labor. That did not occur, so we never got to that question. The Secretary of State deals with that. Anyway, we get to this litigation, and eventually Part I is sorted out, which is the duration of the re-employment rights. The Labor Department seemed to take the position it was two years. We took the position that at a minimum it was five and possibly extendable to eight. Judge Cook, the MSPB Administrative Judge on the case, decided it was five years. That was the end of Phase I. Now at least we knew what the period was for coverage. We go to Phase II, which is what about the benefits anyway, and we went through months and months and months of litigation of this. I wrote to opposing counsel, my colleague, and asked him twice to give us an accounting for these benefits. Twice, we got nothing. I filed a motion with the MSPB requesting that the board simply direct an audit. And the... I mean, this was not a frivolous, spurious motion. This was something that was required by OPM regulation. The OPM regulation, which is at 352.309 of Title V of the CFR at Subsection C, clearly defines the agency responsibility to provide an accounting. No, it doesn't say it. I'm sorry. Did the tables, the Excel tables that you received, provide the necessary accounting information? No. No, Your Honor, they don't. What they are is a wage distribution table. It's at the end of the government's appendix. It shows theoretically what should have been received and what should have been paid. It doesn't show what was received and what was paid. It doesn't show what was transmitted to the Office of Personnel Management. It doesn't show what was received from Mr. Messenger. All it is is a wage table. It may be perfectly accurate, but it doesn't show what was received. Messenger needed to know whether his accounts were being covered. When we could not get that information informally through email correspondence during the course of the litigation from the Department of Labor Counsel, I filed a motion with the board requesting an accounting. The new judge on the case, Judge Vogel, declined to order that. In order to try to get the accounting, we requested by motion that the Office of Personnel Management be joined as a party. They are, after all, the operators of the two benefit programs. OPM, not surprisingly, demurred, saying this isn't our problem. Labor is supposed to give the accounting. Fine. I mean, there we are. I took some further procedural steps to try to accomplish the result that this regulation that I've cited is for the purpose of protecting the rights of the employee's funds. That's what the regulation says. It's a fiduciary obligation. If not to Messenger, to whom? It's to protect these employees on international transfers. That's what the regulation is all about. It's very specific. I thought it was pretty specific in my motion papers. The judge of the board did not agree. So what the judge did was to set a hearing date. Nobody wanted a hearing on this. The judge said, go figure it out in discovery. So my colleague at the Department of Labor and I engaged in document production interrogatories, I believe, and we sorted out what had been paid, what had been paid over to the Department of Labor, and then finally we also sorted out what needed to be paid in order to bring these accounts into proper shape. And the settlement agreement, which is included in the appendix, did exactly that. I then filed the counsel fee motion. Now, the board's decision, not only by the administrative judge, Judge Bogle, but also by the full board, went off on a tangent. They didn't address my arguments under Allen v. Postal Service. What they did say, well, the Labor Department had some concerns as to whether they should be making retirement contributions at all, even though they've been doing it for years, even though the agreement required it, even though the regulation was specific. They had concerns. And they may have had some concerns. And weren't those concerns legitimate? No, Your Honor, they were not. I may disagree, but weren't they legitimate in at least being concerned about what was due, what was not due, what should be set aside, what not? That was not their concern, Your Honor. Their concern was whether they had any obligation to make retirement contributions at all. I was so vexed with the Labor Department's position that I moved the board to get an advisory opinion from OPM on the subject just to get the issue out of the way. The regulation, if you look at 352.309 subsection A, this is OPM's regulation. They administer the retirement system. An employee who is transferred to an international organization with the consent of the employing agency is entitled to retain coverage for retirement, health benefits, and group life insurance purposes if he so chooses. And he did. How could it be any pointer? So when you ask me, did they have a legitimate concern, my answer is no. But if they had one, they certainly never pressed it to the point of an order from the board. They never got... Wasn't there a concern about the time involved, whether it was two years, whether it was five years, whether it was more than five years? Initially, that was sorted out by Judge Cook's order. Once Judge Cook said five years, we went to the benefits phase. That was the end of that. Now, they may have had a concern. That was resolved by the board. And that was Judge Cook's order, five years. So then we said, okay, five years. Where's the accounting? No accounting. Requested by email? Nothing. Requested by motion? Judge denied. Request OPM to be joined? Judge denied. And so it went until the judge said, let's have a hearing, go through discovery, figure it out, counsel, and we did. Now, if you turn to the counsel fee request, we finally get there because that's why we're here. What we're suggesting is that under the Allen case, in the definition of bad faith, which was your very first question to me, so now I'll answer your question, ten minutes later. Bad faith includes such circumstances as a party's obstinate refusal to act rightfully when its duties under the law are clear. The regulation was very clear. Intentional failure to perform a fiduciary duty. That's a fiduciary duty, to account to a person for whom you're holding funds, whether you're a bank, whether you're Morgan Stanley, or whether you're my friends at the Department of Labor. And then the Allen case goes on to talk about the ability to determine bad faith by conduct in the litigation itself, which unnecessarily prolongs the litigation. We went through six months of litigation with Judge Bogle, at least, and we never got what we needed, which was an accounting. If that's not prolongation, I don't know what is. And we then had to go to the board and deal with the counsel fee issues. So under the Allen criteria, under the facts of this case, the Department of Labor prolonged the litigation. They did not come through with an obligation that's set by regulation, which I characterize as fiduciary duty. We never did get the accounting. We finally arrived at a settlement, so we are a prevailing party. For those reasons, we think the board erred as a matter of law and was arbitrary with respect to its determination on fees. We ask that you reverse the board's decision, remand the case to the board so that the actual amounts of the fees can be sorted out if there's a challenge, and that you retain jurisdictions so we can submit a petition for fees here. All right. Thank you. We'll reserve the balance of your time. Thank you, Your Honor. We'll hear from Ms. Gerber. May it please the Court. I want to start just by clarifying the timeline a little bit. Mr. Broida indicated that the Department of Labor did not make a determination as to when Mr. Messinger's reemployment rights terminated until after an appeal was filed at the MSTV, and that's not quite right. The Department of Labor determined in March of 2008 that Mr. Messinger's reemployment rights terminated in August of 2005. How did it take them three years to figure that out? It took them – well, just to clarify, the Department of Labor realized in late 2006 that there were these checks that they had forwarded on that were not actually cashed and deposited properly. And at that point, they started looking into what was going on. There was this issue with transferring from directly dealing with OPM to going through the National Finance Center. And then in the process of looking through what was going on, that's when they realized Mr. Messinger had this – his transfer was supposed to be for two years, for a maximum of up to five. It took time, and certainly that's not ideal. Ideally, the Department of Labor would have – What, three years? Yes, Your Honor. This is a scheme that was not set up by Mr. Messinger. This was a scheme set up by the government. Yes, Your Honor. It is set up by the government, but there's nothing to indicate that the Department of Labor acted so egregiously that the board abused its discretion by not determining that the interest of justice demands an attorney to – You just admitted that there was impropriety in terms of forwarding checks, not cashing them and putting them in the proper accounts within the government. You suggested that. Your Honor – So then the question becomes, isn't it awfully fair of him to ask for an accounting, given that there apparently, by your own admission, were uncashed checks that were supposed to go into his retirement account? It seems like a very legitimate request on his – Your Honor, I don't believe I characterized it as an impropriety, and I would not characterize it as an impropriety. There was confusion with the transfer over to the National Finance Center as sort of a thoroughfare for these checks, rather than directly forwarding them to OPM. And OPM is the one that actually deposits them. Well, they went to the wrong place. They were sent by the government from one place to another, and that's the wrong place. And you don't think that's properly characterized as improper? I would characterize it as a mistake, but impropriety, I think, is – that was simply the distinction I would make.  Yes. Fair enough, Your Honor. The question of demanding an accounting, once the Department of Labor realized that there was this error, the Department of Labor then needed to look into what actually was required. How long did it take for them to generate the accounting? The accounting – so the Department of Labor keeps its own records, and it had a spreadsheet of what it had received and what it had forwarded on. But then it had to determine, according to 352.309C, the requirement is to keep an accounting of what deposits were required. And then this issue arose of whether Mr. Messenger's reemployment rights went all the way through 2008. 309C says the agency is also responsible for collecting, accounting for, and depositing  Yes, Your Honor. Accounting for, in that sentence, seems to imply – it comes right after the word collecting. Yes. Accounting for the funds collected. Yes, Your Honor. And the agency did that, and when – When? When did they provide him with this accounting? Because Mr. Broida suggested to the state they still have never received it, but they've settled, so all's good. Well, Mr. Broida talks both about an audit and an accounting, and in terms of some sort of formal audit, Mr. Broida is correct. There's been no formal audit. But that's not what the statute, or rather, the regulation demands. There was, in 2008, in October of 2008, the agency said, we have documents about – everything's been deposited that carries through the end of 2004. We've determined that your reemployment rights terminated August 31st, 2005. Excuse me. Here's what they do. Excuse me. When you said the agency determined that everything's been deposited, did you show Mr. Messenger that? Did you provide Mr. Broida with some sort of assurance in writing and a detailed accounting, as the regulation requires, an accounting that says, okay, we received $400 on March 29th. We received $600 on March 28th. I don't think that he's arguing a formal audit in IRS terms needs to be done, but I would think a spreadsheet would be good enough. Did you provide something along those lines? Not in October 2008, but it was provided during the MSPB proceedings. There was a spreadsheet with each check and what month those checks applied to, and then there were actual physical photocopies of each check received and forwarded on to OPM with handwritten notes on, this is when we received it, this is when it was forwarded. Those were provided in the MSPB proceeding. But the settlement, let me understand, so the settlement agreed that he would be able to participate in these benefits beyond the five-year period? No, Your Honor. The settlement, so there were two issues with what was the proper amount to be paid into FERS and FEGLI. The first being when Mr. Messenger's reemployment rights terminated. That was finally decided in October 2009 with the other MSPB decision. And the settled amount is to the penny what the agency determined back in October 2008 and initially gave Mr. Messenger as you're paid up through 2004, here's to the end of August 31st, 2005, here's what each party owes. The second issue was... So in other words, even up to the five-year period, there had not been a proper accounting of his funds or care with respect to his funds. Your Honor, what had happened is that once Mr. Messenger, there was an issue between April 2005 and August 2005 as the administrative judge determined with the transfer over to the National Finance Center. But when this problem occurred and at least one of the checks was not cashed, Mr. Messenger just stopped sending checks altogether. He didn't raise it to the attention of anyone at the agency. Initially, he just stopped sending checks. So there were no checks that would have carried him all the way through August 31st, 2005 in any case. He had never sent those. There was nothing for the agency to have deposited that would have gotten them through August 31st, 2005. The second problem, which was referenced a little bit earlier, is that although an employee who has been transferred to an international organization does retain the rights under the statute, at the same time there's a statute that says that the FERS and FEGLI accounts should not be paid into if the employee has started paying into a pension at the international organization. That statute is 5 U.S.C. 3582. Again, it wasn't until 2008 that the Department of Labor even figured out that that might be an issue. That's correct. The Department of Labor was not aware that Mr. Messinger had been paying into the ILO pension fund until November of 2008 when they had... I get the impression if you hadn't had a changeover in your accounting system, you probably would have let him just keep doing this forever? Your Honor, I do not know what would have happened. This program of labor employees going over to international organizations, although it is statutory, it's very rarely used. Admittedly, there were not lots of procedures in place for it because it was so rare, especially Mr. Messinger was from a specific part of the Department of Labor that was not traditionally giving people to, or transferring people rather, to the international organizations. Yes, there were unknowns that were not discovered until later, but that does not mean that there was bad faith on the part of the agency. It also does not mean that the agency acted in such a manner that it should have known it wouldn't prevail upon the merits. That decision, those two factors were explicitly considered by the MSTB, and the MSTB determined that in the interest of justice, attorney's fees were not warranted in the interest of justice, and this court reviewed that on an abuse of discretion standard. The statute for attorney's fees is permissive. The standard itself is subjective, and this court has recognized that the board gets great discretion in determining attorney's fees, and this court awards great deference to that. The agency, the MSTB rather, you know, was aware... Attorney's fees can only be awarded if there is intentional bad faith as opposed to just gross misconduct or incompetence by the agency. I don't believe so, Your Honor. The standard does not necessarily require intentional bad faith, but the actions here... There's a litany of excuses. Well, yes, it's a statute, but it's little known, and very few labor department people do this, and so we just didn't know how to do it, and we have a changeover in our accounting systems, and I mean, it's all... I have trouble balancing my checkbook. I can see how it would happen, but at the same time, you know, it happened to the detriment of Mr. Messenger, and he had to bring a lawsuit, and he kept asking for an accounting, and that part should have been relatively easy, except the checks were sent to the wrong place, and so it was difficult to track them down and figure out how much and when, and so finally you did get him something, which maybe adequately qualifies him in accounting, but only after he had to file a litigation and go really pretty far into the litigation before you provided it. Why isn't all of that cumulatively enough to say, you know what? We messed up here. You should just... Yeah, we'll give you your attorney's fees. Well, Your Honor, the administrative judge determined and made a finding that up through from September 1st, 2000 through April 2005, the agency complied with all of its duties. When exactly was the accounting given? I have a sheet and the photocopies of the checks. It's hard to imagine that the agency complied with all its duties until that was done. So what was the date upon which that was done? Maybe we have a clearly erroneous fact-finding here, which seems to be an adequate ground to reconsider what the court did. Well, Your Honor, clearly erroneous is not the standard, first of all. It would be arbitrary and capricious or lack of substantial evidence, just to clarify. Well, when you figure out the difference between clearly erroneous and lack of substantial evidence, let me know. But the date on which the agency filed all of its documents that it had in its records was March 31st, 2010. So the lower court found that the agency complied with all of its obligations between 2001 and 2006, but it didn't provide Mr. Messenger with anything in the nature of an accounting until 2010? Your Honor, I would not characterize it as anything in the nature of accounting. The agency did provide Mr. Messenger with its calculations. It did not give all the underlying data about all these checks, photocopies until 2010. But again, there were legitimate questions about what properly was due into the FERS and FEGLI accounts. I understand that there are questions about what was due, but there couldn't have been questions about what he paid and what you all had paid. That's what an accounting is. Yes, Your Honor. The merits, however, of Mr. Messenger's appeal to the MSTV were about the correct amounts. The allegations were that the MSTV did not have the correct, or not the MSTV, excuse me, the Department of Labor had not properly deposited the correct amounts. Now, that question of what the correct amounts were, what properly is the accounting for payments required to be made as the regulation states, someone has to determine what is required, what payments are required to be made. And the agency, there were issues that the MSTV had not yet determined. There were legitimate questions about once there was a discovery about the Department of Labor as well as the ILO having pension funds. There was a question about whether any of these payments were properly made to FERS and FEGLI. That still has not been resolved because there was a settlement. And the... He's been determined to be the prevailing party. Yes, Your Honor. And that's not on appeal. That's not a question. We agree that he was a prevailing party. There was a settlement, there was an amount given to him. However, the mere fact of prevailing does not necessitate a decision that the MSTV abused its discretion, that attorney's fees were not warranted in the interest of justice. And I see my time has run out, so we respectfully request that the court affirm the MSTV decision. Thank you very much. Mr. Breuer. Aye, Your Honor. A couple points of clarification. There were two benefits involved. First, basic annuity, group life insurance. Mr. Messenger is a family man. He shouldn't have had to wait until his death to figure out if the Labor Department had properly paid over life insurance payments. But until this argument today, until I listen to my good friend at the Department of Justice articulate the reasons here today, I have never, not once, heard a question of whether or not the Labor Department was obliged to receive from Messenger at his election life insurance contributions and send them over to the Office of Personnel Management. First time I'm hearing it today. And under the statute that's cited by my good friends at the Justice Department and the Labor Department, it doesn't say anything about a disqualification from participation in FERS basic annuity because somebody contributes to another organization's annuity. That's not what the statute says. What the statute says at 5 U.S.C. 3582 subpart A is that if the person is participating in another organization's, the International Labor Organization's annuity program, there may be an issue as to service credit. That has nothing to do with contributions. The service credit relates to the Office of Personnel Management determination of whether the person is qualified for annuity and how much annuity they get based on their length of service when the person applies for annuity when they're 60, 62, 104, whatever it happens to be. Now the government mentioned here that it provided a spreadsheet and the government provides the spreadsheet at the end of its appendix. And they did, but the spreadsheet tells us nothing other than statutory pay rates. The government also suggests that somewhere in the litigation of the MSPB, they finally, they being my good friends in the Department of Labor, finally provided a statement with respect to receipts of checks and what was paid over to the Office of Personnel Management. The government did not include it in their appendix. I did not include it in mine. Given the questions that you've asked, probably should have been there. But as to the timing of this, which was your question, Your Honor, in January of 2010, that was when we filed our motion for an audit and a motion to join the Office of Personnel Management because we could not get this audit from waivering. Messenger couldn't get it. I couldn't get it by my emails to my good friend opposing counsel. It became clear we really needed this audit or accounting. You can call it what you will. Now, counsel for the government says that they supplied this new information, new information to us on March 31st, 2010. That was three months after our motion and three months after our motion had been denied. On March 18th of 2010, I'm reading now from the certified list, our appendix page 3. On March 15th, 2010, the board's judge issued a hearing order. We were in discovery. Now, I don't recall whether the government supplied that material when they finally issued their response to the appeal or in response to my request for production of documents. Either way, it doesn't matter. It was very, very late. Now, as far as the interest of justice... Last point. Pardon me? Last point. Last point. Interest of justice standard, as has been interpreted by the board since 1980, has never placed an intent requirement under the heading of bad faith. They slice and dice the interest of justice standard to include gross procedural error, people who are substantially innocent, where agency positions are clearly unwarranted, and yes, in the statutory definition as parsed by the board in Allen, bad faith. But in the Allen case, there's no reference to intent. You take a look, not at what they say, but what they do. And here, they prolonged this proceeding and failed in their fiduciary responsibilities. Thank you, Your Honor. Thank you very much. Case is submitted. That concludes our arguments this morning. All rise. The court is adjourned from day to day.